Filed 10/22/13  P. v. Jara CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JENNIFER JARA,<br><br>    Defendant and Appellant. | B248681<br><br>(Los Angeles County<br>Super. Ct. No. VA126379) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, Jennifer Jara, appeals from the judgment entered following her plea of no contest to the sale, offer to sell or transportation of methamphetamine, a controlled substance, in violation of Health and Safety Code section 11379, subdivision (a). The trial court suspended imposition of sentence and granted Jara three years probation, one condition of which was that she serve 180 days in county jail. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*.[1]

At approximately 7:55 p.m. on August 31, 2012,[2] Los Angeles County Sheriff's Department Detective Michael Mileski was on patrol on Elaine Avenue in the City of Norwalk. As he was driving northbound, Mileski observed the vehicle directly in front of him turn left onto Hoplin Avenue. The detective noted the car had "extremely dark tinted windows" and, because he could not see inside the vehicle to determine the number of occupants and it is "illegal to have a tint on the front left and front right windows," he decided to initiate a traffic stop.

After the vehicle pulled to the side of the road, the detective contacted the driver, Jara. He asked her about her tinted windows, then asked her for her driver's license. Jara stated she did not have her license with her.

---

[1]    The facts have been taken from the transcripts of the motion to suppress evidence and the preliminary hearing.

[2]    The detective indicated it was "dark out, however, the street was illuminated with streetlights."

2

Approximately one minute later, another deputy sheriff, Juan Sanchez, arrived. When Sanchez asked Jara for her license and the car's registration, Jara told the deputy they were in the glove compartment. Jara appeared "unusually nervous" and was "[k]ind of shaking" as she started to go through the glove compartment in an attempt to find the documents. Sanchez then asked Jara "if she had anything illegal on her person or inside of her vehicle." Although Jara stated she did not, at that point Sanchez became "concerned for [his] safety" and he asked Jara and her daughter, who had been riding as a passenger in the car, to get out and sit on the sidewalk "to the rear of [their] vehicle."[3] After Jara and her daughter had gotten out of the car, sat down on the sidewalk and Sanchez had informed Jara that she was not free to leave, the deputy asked Jara for permission to search the vehicle. Jara told the deputy he could search the car and, less than a minute later, he and another deputy who had arrived at the scene, Deputy Veatch, began the search.[4] While Deputies Sanchez and Veatch searched the car, Detective Mileski stayed with Jara and her daughter.

As they searched the vehicle, Sanchez saw Deputy Veatch find "a plastic baggie containing a crystal-like substance resembling methamphetamine" behind a rear panel in

---

[3] Sanchez testified: "We're always on alert for our safety. We don't know if they're going to retrieve weapons from the vehicle."

[4] Later, Deputy Sanchez testified he and Deputy Veatch began the search of the car within "[t]hree or four minutes," although "[p]robably less than three minutes" after Jara and her daughter had been directed to sit on the sidewalk.

the center console.[5]  At that point, Detective Mileski left the area as he had been directed

to respond to an "emergency traffic collision."  However, after Deputy Veatch found the

methamphetamine, Sanchez approached Jara and read to her her *Miranda*[6] rights.  When

Sanchez then asked Jara if the methamphetamine belonged to her, she indicated the car

belonged to her parents and "she had nothing to say about" to whom the

methamphetamine belonged.[7]  Sanchez then placed Jara under arrest.  According to

Deputy Sanchez, Veatch found the narcotics within six minutes of the time she had

arrived at the scene.

    2.  *Procedural history*.

Following a preliminary hearing, on October 29, 2012 an information was filed in

which Jara was charged with one count of the felony of possession for sale of

methamphetamine (Health & Saf. Code, § 11378) (count 1) and one count of the felony

of the sale, offer to sell or transportation of methamphetamine (Health & Saf. Code,

§ 11379, subd. (a)) (count 2).  Jara entered pleas of not guilty to both counts.

On January 11, 2013, counsel for Jara filed in the trial court notice of a motion to

suppress evidence pursuant to Penal Code section 1538.5.  A hearing was held on the

motion on February 7, 2013.  After considering the written motion and response, hearing

---

[5]    It was later determined the amount of methamphetamine exceeded 15 grams.
According to Deputy Sanchez, ".02 grams is considered a usable amount."

[6]    *Miranda v. Arizona* (1966) 384 U.S. 436.

[7]    At the preliminary hearing, Sanchez testified he told Jara he was going to have the
car towed.  Jara had objected, stating something to the effect of the deputy "shouldn't
take her parents' car."  Jara then apparently said, " 'You know that's my shit.' "

evidence on the motion and reviewing the cases cited by the parties, the trial court denied the motion. The court determined the traffic stop by Detective Mileski was reasonable because it was clear the car's windows were "overly tinted." In addition, the trial court found the detention had not been "overly prolonged." Under all of the circumstances presented, the trial court did not "believe there [had been] a Fourth Amendment violation."

After the trial court denied the motion to suppress evidence, it asked the parties if they were ready to set the matter for trial. The prosecutor then indicated he was "willing to offer what had been previously offered, . . . [which was] three years of formal probation on count [2] with 180 days county jail [time]." After some consideration and consultation with counsel, Jara decided to accept the People's offer. Jara filled out a "Felony Advisement of Rights, Waiver, and Plea Form." The prosecutor then advised her she had a right to a jury trial, the right to confront and cross-examine the witnesses against her, the right to present a defense, which included the right to use the subpoena power of the court to bring in witnesses to testify on her behalf at no cost to her, and the right to remain silent, which is also referred to as the right against self-incrimination. After Jara indicated she understood her rights and wished to waive them, the prosecutor advised her of the consequences of her plea. He indicated "[t]he maximum confinement time on this charge is four years. However, due to [her] plea," Jara would be placed on probation for a period of three years, 180 days of which she would serve in county jail. Jara indicated she understood the terms, conditions and consequences of the plea agreement, then pled no contest to the charge alleged in count 2 of the information, "that

on or about August 31, 2012, [she] violated Health and Safety Code section 11379[, subdivision] (a), . . . a felony, commonly known as [the] sale, offer to sell or transportation of a controlled substance, to wit, methamphetamine." Defense counsel joined in the waivers, concurred in the plea and stipulated to a factual basis for the plea based upon the police reports and transcript of the preliminary hearing. The trial court then found Jara had "expressly, knowingly, understandingly and intelligently waived her constitutional rights" and found her "pleas and admissions [had been] freely and voluntarily made with [an] understanding of the nature of the consequences." The court further found a "factual basis for the plea and accept[ed] the plea and [found Jara] guilty."

Jara waived her right to be sentenced within 20 days of her plea and sentencing was set for March 11, 2013. On that day, the trial court suspended imposition of sentence as to count 2 and placed Jara "on three years of formal, or felony, probation," one of the terms of which was that she serve 180 days in county jail. After awarding Jara three days of presentence custody credit, the court imposed a $280 restitution fine (Pen. Code, § 1202.4, subd. (b)), a stayed $280 probation revocation restitution fine (Pen. Code, § 1202.44), a $40 court operations fee (Pen. Code, § 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373), a $50 laboratory fee (Health & Saf. Code, § 11372.5) and an $85 penalty assessment (Pen Code, § 1464; Gov. Code, § 76000). The trial court then dismissed the remaining counts and allegations.

Jara filed a timely notice of appeal on May 10, 2013 "based upon the denial of [her] motion to suppress evidence made pursuant to Penal Code section 1538.5."

## CONTENTIONS

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record.

By notice filed August 21, 2013, the clerk of this court advised Jara to submit within 30 days any contentions, grounds of appeal or arguments she wished this court to consider. No response has been received to date.

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CROSKEY, Acting P. J.


We concur:


KITCHING, J.          ALDRICH, J.


7